LAW OFFICE OF MICHAEL JAY GREEN
MICHAEL J. GREEN     4451
michaeljgreen@hawaii.rr.com
- *AND* -
LAW OFFICE OF PETER C. HSIEH
PETER C. HSIEH     3204
hsiehp002@hawaii.rr.com
- *AND* -
LAW OFFICE OF ALAN Y. OKAMOTO
ALAN Y. OKAMOTO     9872
alan@michaeljaygreen.com
Davies Pacific Center
841 Bishop St., Ste. 2201
Honolulu, Hawaii  96813
Phone: (808) 521-3336

Attorneys for Plaintiffs
TERRI J.K. NIIMOTO and
KACIE T.M. NIIMOTO

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| TERRI J.K. NIIMOTO; KACIE T.M. NIIMOTO, | CIVIL NO. _____ ___ |
| Plaintiffs, | COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |
| vs. | |
| HAWAII STATE BOARD OF EDUCATION, HAWAII STATE DEPARTMENT OF EDUCATION, KYLE MIYASHIRO, individually and as Vice Principal of Pearl City High School, BRYAN SIMPSON, individually and as Aide of Pearl City High School, JUSTIN WEST, JOHN DOES 1-10, JANE DOES 1-10, DOE | *(caption continued on next page)* |

CORPORATIONS 1-10, DOE
GOVERNMENTAL ENTITIES 1-10
DOES 1-20,

          Defendants.

## COMPLAINT

Plaintiffs TERRI J.K. NIIMOTO and KACIE T.M. NIIMOTO, by and through their attorneys, Michael Jay Green, Peter C. Hsieh, and Alan Y. Okamoto, for a Complaint against the above-named Defendants, allege and aver as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 and 1367 and pendant jurisdiction over state claims, as this action is brought pursuant to Title IX of the U.S. Education Amendments of 1972, Public Law No. 92-318, 86 Stat. 235 (June 23, 1972, codified as 20 U.S.C. §§ 1681-1688.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because (1) the defendants are residents of the State in this district and (2) a substantial part of the events or omissions giving rise to Plaintiff's claims, injuries and/or damages occurred in this judicial district.

3.      Pursuant to HRS § 657-1.8(a), Plaintiff's claims are within the eight-year statute of limitations as she was a minor at the time of the sexual assault and reached the age of majority in July 2014.

PARTIES

4.      Plaintiff TERRI J.K. NIIMOTO ("MRS. NIIMOTO") is, and was at all relevant times herein, a resident of the City and County of Honolulu, State of Hawaii.

5.      Plaintiff KACIE T.M. NIIMOTO ("KACIE") is, and was at all relevant times herein, a resident of the City and County of Honolulu, State of Hawaii.

6.      Defendant HAWAII STATE BOARD OF EDUCATION ("BOE") is, and was at all relevant times herein, a state government of the State of Hawaii.

7.      Defendant HAWAII STATE DEPARTMENT OF EDUCATION ("the DOE") is, and was at all relevant times herein, a state government of the State of Hawaii.

8.      Defendant KYLE MIYASHIRO ('MIYASHIRO") is, and wat at all relevant times herein, a resident of the City and County of Honolulu, State of Hawaii, and is being named in his individual capacity and as Vice Principal of Pearl City High School,

9.      Defendant BRYAN SIMPSON ("SIMPSON"), is, and was at all relevant times herein, a resident of the City and County of Honolulu, State of Hawaii, and being named in his individual capacity and as an aide of Pearl City High School.

3

10.  Defendant JUSTIN WEST ("WEST") is, and was at all relevant times herein, a resident of the City and County of Honolulu, State of Hawaii.

11.  Defendants JOHN DOES 2-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE GOVERNMENTAL ENTITIES 1-10 DOES 1-20 are sued herein under fictitious names for the reason that their true names, capacities and responsibilities are presently unknown to Plaintiffs, but upon information and belief they are persons, entities, governmental agencies, and/or partnerships who were in some manner presently unknown to Plaintiffs engaged in the activities alleged herein; and/or are in some manner responsible for the injuries and damages to Plaintiffs; and/or are persons who conducted some activity in a negligent, wrongful, and/or willful manner or who failed to fulfill a duty or obligation, which action, conduct, error or omission was the proximate cause of injuries or damages to Plaintiffs; and/or were in some manner related to the previously named Defendants engaged in the activities alleged herein.  Plaintiffs will seek leave to amend this Complaint when the true names and capacities of the Doe Defendants have been ascertained.

## FACTUAL ALLEGATIONS

12.  The BOE is a state agency established by the Hawaii State Constitution, which grants the Board the power to formulate statewide educational

4

policies.  The Board appoints the executive officers of the public school system and public library system and the members of the State Public Charter School Commission.

13.    The DOE administers a compulsory school system overseeing approximately 256 public schools.

14.    One of these DOE schools is Pearl City High School located in Waimalu in the City and County of Honolulu, State of Hawaii.

15.    Pearl City High School is a public, secondary co-educational, college preparatory high school, which is part of the DOE, governed by the BOE.

16.    The BOE and DOE have educational programs or activities that receive federal funding, and are therefore subject to the provisions of Title IX, 20 U.S.C. §§ 1681-1688.

17.    MIYASHIRO was at all relevant times herein the Vice Principal of Pearl City High School.

18.    KACIE was at all relevant times herein a 10th grade student at Pearl City High School.

19.    WEST was at all relevant times herein an 11th grade student at Pearl City High School.

20.    At all relevant times herein, due to the compulsory nature of its

education system, the BOE and DOE, including administrators, teachers and other staff in DOE schools, including, but not limited to, MIYASHIRO, had a duty to supervise and to take reasonable steps to prevent reasonably foreseeable harm to their students who on school grounds during class, recess and other intermissions and before and after school.

21.   In and prior to April 2012, the BOE, DOE, and MIYASHIRO had actual knowledge that WEST was a special needs student with Autism who had a propensity to be violent and aggressive toward other students at Pearl City High School, and had, on numerous occasions prior to April 2012, assaulted, threatened, terrorized, and/or bullied other students, resulting in injury to the psychological, social, or physical well-being of those students.

22.   Due to WEST's chronic violent and aggressive behaviour, the BOE and DOE employed, hired, and/or retained SIMPSON as a full-time aide to provide one-to-one supervision to WEST while WEST was on school grounds during class, recess and other intermissions and before and after school, to prevent him from assaulting, threatening, terrorizing, and/or bullying the other students at Pearl City High School.

23.   Prior to April 2012, SIMPSON had actual knowledge that WEST was a special needs student with Autism who had a propensity to be violent and

aggressive toward other students at Pearl City High School, and had, on numerous occasions prior to April of 2012, assaulted, threatened, terrorized, and/or bullied other students, resulting in injury to the psychological, social, or physical well-being of those students

24.     Prior to April 2012, SIMPSON was directed and instructed to be a full-time aide to WEST and provide one-to-one supervision to WEST while he was on school grounds during class, recess and other intermissions and before and after school, to prevent him from assaulting, threatening, terrorizing, and/or bullying the other students at Pearl City High School.

25.     Both KACIE and WEST were members of the Pearl City High School band.

26.     The members of the band, including KACIE and WEST, were required to attend mandatory band practice every day, usually between 10 a.m. and 12 p.m., but the actual time would vary depending on the day of the week.

27.     On or about Thursday, April 12, 2012, KACIE went to the auditorium in the Pearl City Cultural Center located on campus at Pearl City High School to prepare for the band rehearsal.

28.     WEST was also in the auditorium.

29.     SIMPSON, who was supposed to be watching WEST at the time,

7

was not with WEST, and it was later discovered that he was sleeping in the audience section of the auditorium.

30.   KACIE was sitting in her usual assigned seat in the back of the band in the percussion section when WEST walked up to her, pulled her up from her chair, sat himself down on the chair, put her on his lap, held her down with his left arm around her waist, and stuck his right hand down the front of her pants and fondled and digitally penetrated her vagina.

31.   She told him to stop several times, but he refused.

32.   She was merely five feet tall and weighed approximately 95 to 100 pounds.

33.   At six feet and approximately 130 to 140 pounds, WEST towered over her by a foot and outweighed her by 30 to 40 pounds.

34.   It took all of her strength to break free, but WEST picked her up again and carried her to another part of the auditorium behind some curtains.

35.   There, he restrained her and thrust his hand in her pants and again fondled and digitally penetrated her vagina.

36.   She kept telling him to stop, but he refused.  After an intense struggle, she was able to pull his hand out her pants and run out of the auditorium.

37.   She was so hurt, shocked, and humiliated that she too

embarrassed to talk about it with anyone until around December 2012 when she confided in her school counselor but asked her not to tell anyone about it.

38.     The school counselor obliged and kept quiet about it, contrary to law.

39.     As a school counselor, she had an absolute and unconditional legal duty to report the rape to the school administrators, the police, and KACIE's parents, including MRS. NIIMOTO, pursuant to applicable laws and school policies and procedures.

40.     KACIE subsequently reported the rape to her mother, MRS. NIIMOTO.

41.     Shortly after that, in January 2013, KACIE was caught smoking marijuana during school.  MRS. NIIMOTO was called to the school.  MIYASHIRO questioned KACIE in his office in the presence of MRS. NIIMOTO.

42.     During this meeting, KACIE was still reticent about talking about the rape.   However, when her mother assured her supportively, KACIE reported the details of the rape to MIYASHIRO.

43.     MIYASHIRO was speechless upon hearing the report, but failed, neglected, and/or refused to conduct a full and proper investigation of the reported rape and take other appropriate lawful action.

44.    Instead, MIYASHIRO called the police and had KACIE arrested for smoking pot on school grounds, and suspended her from school for 90 days.

45.    MRS. NIIMOTO later had to go down to the police station to take KACIE home.

46.    Neither MIYASHIRO nor any other administrator of Pearl City High School failed, neglected, and/or refused to take any action to address the rape.

47.    The sexual assault of KACIE by WEST constitutes or would have constituted a criminal offense under part V or VI of Chapter 707 of the Hawaii Revised Statutes ("HRS").

48.    WEST was subsequently prosecuted and convicted on two counts of Sexual Assault in the First Degree in the Family Court of the First Circuit Court, State of Hawaii.

49.    The sexual assault by WEST also constitutes sexual harassment under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

50.    The sexual harassment denied KACIE access to educational opportunities or benefits and had a concrete negative effect on her education, including, but not limited to, KACIE started to cut half of her classes and smoking marijuana every day, three times a day during school, and on weekends; she stopped studying for her tests; she began experiencing severe migraines, which interfered

10

with her intellectual and academic abilities; and her grades dropped from A's and B's in the 9th and 10th grade to D's and F's in the 11th grade, plummeting to a cumulative GPA of 0.5 by January 2013.

51.    In the Fall Quarter 2012, KACIE transferred to a different high school, but transferred back to Pearl City High School in the second quarter 2012, and then dropping out of school completely in January 2013.

52.    Despite their knowledge of the substantial risk of harm WEST posed to the other students at Pearl City High School, the BOE, DOE, and SIMPSON failed, neglected, and/or refused to supervise and monitor WEST in the band room on the day of the incident, which led to the sexual assault.

53.    SIMPSON's sleeping on the job was outrageous and grossly irresponsible, which patently demonstrates his utter lack of training and supervision by the BOE and DOE.

54.    Defendants' wrongful conduct was a substantial cause of Plaintiffs' harm.

55.    As a result of Defendants' wrongful conduct, Plaintiffs suffered and continues to suffer substantial economic and non-economic damages.

/  /  /

/  /  /

## COUNT I
*Violation of Title IX of the Education Amendments of 1972,*
*20 U.S.C. § 1681 et seq.*

56.     Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 55 as though fully alleged herein.

57.     The sexual harassment of KACIE was so severe, pervasive, and objectively offensive that it could be said to deprive her of access to education opportunities or benefits.

58.     Defendants had actual knowledge of the sexual harassment.

59.     Defendants were deliberately indifferent to the harassment.

60.     Defendants' wrongful conduct was a substantial cause of Plaintiffs' damages.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs are entitled to recover all lawful damages and reasonable attorneys' fees and costs against Defendants in such amounts as shall be shown at a trial or hearing hereof.

## COUNT II
*Negligent Supervision*

62.     Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 61 as though fully alleged herein.

63.     WEST posed a foreseeable risk of harm to the other students at

12

school.

64.   Defendants knew or should have known that if they failed to monitor and supervise WEST, there was a substantial likelihood that WEST would cause harm to another student at the school

65.   Defendants breached their duty.

66.   Defendants' breach caused damages to Plaintiffs.

67.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs are entitled to recover all lawful damages and reasonable attorneys' fees and costs against Defendants in such amounts as shall be shown at a trial or hearing hereof.

<u>COUNT III</u>
*Negligent Supervision and/or Training*

68.   Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 67 as though fully alleged herein.

69.   The BOE and DOE owed a duty to properly train and supervise its administrators, teachers and other staff at Pearl City High School on their duty supervise and to take reasonable steps to prevent reasonably foreseeable harm to their students who on school grounds during class, recess and other intermissions and before and after school

70.   The BOE and DOE breached their duty.

13

71.     Defendants' breach caused damages to Plaintiffs.

72.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs are entitled to recover all lawful damages and reasonable attorneys' fees and costs against Defendants in such amounts as shall be shown at a trial or hearing hereof.

<u>COUNT IV</u>
*Negligence*

73.     Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 72 as though fully alleged herein.

74.     Defendants owed a duty of care to supervise and to take reasonable steps to prevent reasonably foreseeable harm to their students while on school grounds, during class, recess and other intermissions, and before and after school.

75.     Defendants breached their duty to Plaintiffs.

76.     Defendants' breach caused damages to Plaintiffs.

77.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs are entitled to recover all lawful damages and reasonable attorneys' fees and costs against Defendants in such amounts as shall be shown at a trial or hearing hereof.

14

## COUNT V
*Gross Negligence*

78.     Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 77 as though fully alleged herein.

79.     Defendants acted with reckless disregard of the need to use reasonable care, which was likely to cause foreseeable injury or harm to Plaintiffs.

80.     Defendants' breach caused damages to Plaintiffs.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs are entitled to recover all lawful damages and reasonable attorneys' fees and costs against Defendants in such amounts as shall be shown at a trial or hearing hereof.

## COUNT VI
*Intentional Infliction of Emotional Distress*

82.     Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 81 as though fully alleged herein.

83.     Defendants' wrongful conduct was intentional.

84.     Defendants' conduct was outrageous, beyond bounds of decency, willful and wanton, and/or malicious.

85.     Defendants' wrongful conduct caused damages to Plaintiffs.

86.     As a direct and proximate result of Defendants' wrongful

conduct, Plaintiffs are entitled to recover all lawful damages and reasonable attorneys' fees and costs against Defendants in such amounts as shall be shown at a trial or hearing hereof.

COUNT VII

*Negligent Infliction of Emotional Distress*

87.     Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 86 as though fully alleged herein.

88.     Defendants caused Plaintiffs to suffer serious emotional distress or disturbance.

89.     Defendants caused Plaintiffs to suffer demonstrable physical injury and/or mental illness.

90.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs are entitled to recover all lawful damages and reasonable attorneys' fees and costs against Defendants in such amounts as shall be shown at a trial or hearing hereof.

WHEREFORE, Plaintiffs pray for Judgment in their favor and against Defendants, jointly and severally, as follows:

A.     Special damages in an amount to be determined at a trial or hearing hereof;

B.     General damages in an amount to be determined at a trial or

16

hearing hereof;

      C.    Compensatory damages in an amount to be determined at a trial or hearing hereof;

      D.    Punitive, exemplary, and/or treble damages in an amount to be determined at a trial or hearing hereof;

      E.    Reasonable attorneys' fees and costs;

      F.    Pre-judgment interest and post-judgment interest; and

      G.    Any and all other relief as may be deemed just and equitable by the Court.

      DATED:   Honolulu, Hawaii, February 13, 2017.

MICHAEL JAY GREEN
PETER C. HSIEH
ALAN Y. OKAMOTO
Attorneys for Plaintiffs
TERRI J.K. NIIMOTO and
KACIE T.M. NIIMOTO

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| TERRI J.K. NIIMOTO; KACIE T.M. NIIMOTO,<br><br>            Plaintiffs,<br><br>   vs.<br><br>HAWAII STATE BOARD OF EDUCATION, HAWAII STATE DEPARTMENT OF EDUCATION, KYLE MIYASHIRO, individually and as Vice Principal of Pearl City High School, BRYAN SIMPSON, individually and as Aide of Pearl City High School, JUSTIN WEST, JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE GOVERNMENTAL ENTITIES 1-10 DOES 1-20,<br><br>            Defendants. | CIVIL NO. _____<br><br>DEMAND FOR JURY TRIAL |

## DEMAND FOR JURY TRIAL

     Plaintiffs TERRI J.K. NIIMOTO and KACIE T.M. NIIMOTO hereby demand a trial by jury on all issues triable of right by jury in this case, pursuant to Rule 38, Federal Rules of Civil Procedure.

/  /  /

/  /  /

18

DATED:   Honolulu, Hawaii, February 13, 2017.

MICHAEL JAY GREEN
PETER C. HSIEH
ALAN Y. OKAMOTO
Attorneys for Plaintiffs
TERRI J.K. NIIMOTO and
KACIE T.M. NIIMOTO